UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY JEAN DENNINGS,

       Plaintiff,                      Civil Action No. 13-10386

      v.                             District Judge Terrence G. Berg
                                       Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiff Kimberly Jean Dennings appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits and supplemental security income.  (*See* Dkt. 1, Compl.)  Before the Court for a report and recommendation (Dkt. 3) are the parties' cross-motions for summary judgment (Dkts. 9, 14).  For the reasons set forth below, this Court finds that substantial evidence supports the decision of the Administrative Law Judge.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 14) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

**I. BACKGROUND**

Dennings was 43 years old at the time she applied for disability insurance benefits and supplemental security income. (Tr. 118-145.) She completed two years of college and worked previously as a cook's assistant and as a home-health aide. (Tr. 31, 47.) Plaintiff alleges that she cannot work because of bilateral lymphedema in both legs and feet which she claims affects her ability to sit and stand for long periods of time without experiencing intense pain. (*Id*.)

**A. Procedural History**

On October 18, 2010, Plaintiff applied for disability insurance benefits and supplemental security income asserting that she became unable to work on August 28, 2010. (Tr. 118-131, 132-145.) The Commissioner initially denied Plaintiff's disability applications on December 21, 2010. (Tr. 59-76.) Plaintiff then requested an administrative hearing, and on September 15, 2011, she appeared with counsel before Administrative Law Judge Kathleen H. Eiler, who considered her case *de novo*. (Tr. 27-52.) In an October 28, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 23.) The ALJ's decision became the final decision of the Commissioner on December 28, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff filed this suit on January 31, 2013. (Dkt. 1, Compl.)

**B. Testimony at the Hearing Before the ALJ**

*1. Plaintiff's Testimony*

Plaintiff testified that she has not worked since her disability onset date of August 28, 2010. (Tr. 31.) Plaintiff estimated that she could walk a half block before needing to rest. (Tr. 32.) Plaintiff testified that she cannot walk on uneven surfaces, though, because her feet and legs are very

2

sensitive and that would be too painful. (Tr. 40.) She also estimated that she could stand for 10 to 20 minutes before needing to rest. (Tr. 32.) Dennings indicated that she could sit for approximately 30 minutes, but it depended on the swelling in her legs and feet. (*Id*.) Plaintiff said that she could sit for longer periods of time if her feet were "propped up." (Tr. 31.) When her feet were elevated, the swelling went down, she was comfortable, and was not in pain. (Tr. 32-33.) Plaintiff described the pain in her legs and feet as "real heavy, dull pain, like if you get a toothache, the throbbing-type pain." (Tr. 33.) Plaintiff indicated that she had a recliner at home to elevate her legs. (Tr. 33.) She testified that she needed to elevate her legs to above the waist. (Tr. 39.) She sat in the recliner for a few hours, and then "g[ot] up after a couple of hours and move[d] around, too." (*Id*.) Plaintiff spent approximately 80 percent of her day in the recliner with her feet elevated. (Tr. 40.) Plaintiff also estimated that she could lift 10 pounds. (Tr. 41.)

Plaintiff was taking water pills, potassium pills, blood pressure medication, and prescription strength Motrin. (Tr. 33.) Plaintiff reported that the Motrin helped "a little" with alleviating her pain. (Tr. 39.) She reported no side effects from taking her medications. (Tr. 34.)

Plaintiff indicated that her physicians said nothing about dietary restrictions, but they wanted her legs elevated, they did not want her to climb stairs, they did not want her to bend, and they did not want her to squat. (Tr. 36.)

Plaintiff indicated that she has two daughters who live with her, a 3 year old and a 13 year old. (Tr. 37.) The 3 year old is at home with her all day, and the 13 year old attends school during the day. (*Id*.) Plaintiff reported that she attended parent-teacher conferences, but that she has not attended any school activities in over one year. (*Id*.)

3

Plaintiff does some housework. (Tr. 38.) She reported that she cooked sitting down. (*Id*.) Plaintiff indicated that while cleaning, she would usually sit down and sweep around herself. (Tr. 40.) Plaintiff testified that she did her own laundry with the help of her 13 year old daughter. (Tr. 41.) She also went grocery shopping with the help of a motorized scooter. (*Id*.) Plaintiff also indicated that she drove a car. (Tr. 38.) Plaintiff testified that she drove part of the way to the hearing, but that she needed to stop two times because she could not sit in the same position for that long. (Tr. 39, 42.) Plaintiff testified that her legs and feet had swelled so much during the car ride to the hearing that they did not fit into her shoes. (Tr. 42.) A friend paid Plaintiff's bills because she could not stand in line to pay them. (*Id*.) Plaintiff was able to go to church because there was a cushioned bench in the lobby where she was able to sit and put her legs up if she got uncomfortable. (Tr. 43.) Plaintiff's most comfortable position was "sitting with [her] feet up." (*Id*.)

Plaintiff indicated that she occupied her time by chatting online with her friends and by reading. (Tr. 39.)

### 2. *The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience, with an RFC identical to the ultimate determination of Plaintiff's RFC. (Tr. 18, 48.) Particularly important here, this hypothetical individual would be able to elevate her legs to footstool level while seated. (Tr. 49.) The VE testified that the following jobs were available in Michigan for such an individual: security monitor, office clerk, and receptionist. (Tr. 49-50.) The VE also testified that if Plaintiff had to elevate her feet to waist level while seated, that would eliminate all

of the listed jobs and all competitive employment. (Tr. 50.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis

reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Eiler found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 28, 2010. (Tr. 16.) At step two, she found that Plaintiff had the following severe impairments: lymphedema and obesity. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Tr. 17.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds, crouch, kneel, or crawl, but she can occasionally balance, stoop and climb ramps and stairs. She should avoid all exposure to workplace hazards such as moving machinery and unprotected heights. She must elevate her legs to foot-stool level while seated.

(Tr. 18.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 21.) At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 22.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of her decision. (Tr. 23.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation

marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

**IV. ANALYSIS**

Plaintiff argues that the ALJ erred in four ways: (1) the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence as it does not accurately portray Plaintiff's impairments; (2) the ALJ erred in not giving the proper weight to Plaintiff's treating sources; (3) the ALJ improperly discounted Plaintiff's credibility; and (4) the ALJ erred by giving an inaccurate hypothetical to the vocational expert.

**A.  The RFC**

Plaintiff argues that the ALJ failed to recognize certain evidence that shows that she was required to elevate her feet to waist-level, thereby precluding all full-time competitive employment. (Pl.'s Mot. Summ. J. at 6-12.) Plaintiff specifically mentions two pieces of evidence that she argues the ALJ overlooked, or improperly weighed.  (Pl.'s Mot. Summ. J. at 9-11.)  First, Plaintiff highlights an office note where physician assistant Holly Cronkright reported that Plaintiff's swelling had gone down with diuretics.  (*Id*. at 9 (citing Tr. 19, 236).)  In this note, Cronkright indicates that although Plaintiff's swelling subsides with diuretics, the swelling returns when she goes back to work.  (Tr. 236.)   However, as the Commissioner points out, this note was authored during a time when Plaintiff was working at a job that required her to be on her feet 32 hours per week. (Tr. 245.)  Further, the vocational expert testified that Plaintiff's job during this time was being performed at the medium level.  (Tr. 47.)  The RFC here differs significantly.  The ALJ provided for a limited range of sedentary work which involves sitting for two-thirds of the day, and allows Plaintiff to elevate her legs to foot-stool height.  (Tr. 18.)

Second, Plaintiff takes issue that the ALJ classified Dr. Brian Beeman as an evaluating vascular surgeon, not the "interpreting physician of the lower extremity duplex venous scanning."

(Pl.'s Mot. Summ. J. at 10 (citing Tr. 256-57).) It appears that on August 26, 2010, Plaintiff's primary care physician, Dr. Enam Hanna, referred Plaintiff to a vascular specialist. (Tr. 240.) Dr. Hanna identified Dr. Beeman as a specialist in vascular diseases and lymphedema on the "Attending Physician's Statement" for the Hartford Insurance Company in June 2011. (Tr. 270.) This Court is not certain how Plaintiff's claim of error, if any, effects the outcome. In fact, Dr. Beeman made no recommendations whatsoever regarding Plaintiff needing to elevate her legs. (Tr. 257.) Instead, Dr. Beeman recommended compression stockings and "perhaps" a lymphedema pump. (*Id.*) His report additionally indicated that no further studies or invasive treatment were necessary. (*Id.*)

### B. Treating Source Rule

Plaintiff next argues that the ALJ improperly discounted the opinions of her treating physician, Dr. Hanna, and physician assistant, Cronkright, and did not adequately explain the reasons for doing so. (Pl.'s Mot. Summ. J. at 12-16.) Plaintiff alleges that had the ALJ afforded these opinions their proper weight, she would have received a favorable decision. (*Id.* at 16.)

Under the treating-source rule, the opinions of a claimant's treating physicians are generally given more weight than those of non-treating physicians because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In fact, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," then an ALJ must give the opinion "controlling" weight. 20 C.F.R. §§ 404.1527(c)(2)

416.927(c)(2); *see also Wilson*, 378 F.3d at 544. And when an ALJ does not accord the treating physician's opinion controlling weight, he must consider the non-exhaustive list of factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c) to determine how much weight to assign the opinion. Rogers, 486 F.3d at 242; *accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

The treating-source rule additionally includes a procedural requirement that an ALJ provide "good reasons" for the weight he assigns a treating-source opinion. *See e.g., Wilson*, 378 F.3d at 544; *see also* S.S.R. 96-2p, 1996 WL 374188, at *4-5. There are three reasons for this explanatory requirement: (1) "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied," (2) to "ensure[ ] that the ALJ applies the treating physician rule," and (3) to "permit[ ] meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (internal quotation marks omitted); see also S.S.R. 96-2p, 1996 WL 374188, at *4-5. This procedural right is substantial: abridgement typically warrants remand even if substantial evidence supports the ALJ's disability determination. *See Rogers*, 486 F.3d at 243; Wilson, 378 F.3d at 544.

### 1.     Dr. Hanna

ALJ Eiler accorded "little weight" to Dr. Hanna's opinion. As summarized by the ALJ, Dr. Hanna reasoned "that the claimant could lift up to 20 pounds (5F/3). He further found that the claimant could never bend, kneel, or crouch but could frequently reach, finger, and handle." (Tr. 271.) The ALJ explained:

> Dr. Hanna's own reports, along with the other medical evidence of
> record, fail to reveal the type of significant clinical and laboratory

10

> abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. The course of conservative treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported.

(Tr. 20.)

The Commissioner correctly points out that the limitations set forth by Dr. Hanna are consistent with ALJ Eiler's ultimate RFC, except that Dr. Hanna indicated that Plaintiff could not bend at the waist (Def.'s Mot. Summ. J. at 19 (citing Tr. 271).) As for that omission, Plaintiff testified that she could bend at the waist (Tr. 36, 167), so the ALJ was justified in according little weight to Dr. Hanna's contrary position. In further support of Plaintiff's ability to work, on the April 1, 2011 Attending Physician's Statement, Dr. Hanna only indicated that Plaintiff was unable to attend to tasks of her then current job, not that she was disabled and unable to participate in all competitive work. (Tr. 211.)

The ALJ also discounted Dr. Hanna's opinion because it was not supported by the requisite clinical and laboratory findings. (Tr. 20.) Indeed, it appears that the only provider who recorded the result of tenderness in Plaintiff's legs was the occupational therapist, who found only moderate tenderness in the calf region. (Tr. 215.) Plaintiff has not directed the Court to any objective evidence that the ALJ overlooked to support Dr. Hanna's conclusion that she could not bend at the waist. The supportability of a medical source opinion, including the amount of relevant evidence cited and the degree of explanation given, is a basis for an ALJ to discount a physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3); *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (ALJ not bound by conclusory, unsupported statements of physician); *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (where ALJ failed to identify objective medical evidence to

11

support opinion regarding impairments, the ALJ did not err in discounting opinion). This Court concludes that the ALJ incorporated all of Dr. Hanna's restrictions into the RFC save his restriction regarding bending at the waist. Because Plaintiff testified that she could bend at the waist and Dr. Hanna did not identify any objective medical evidence to support that finding, the ALJ did not err in not incorporating that finding into the RFC.

### 2. *PA Cronkright*

Plaintiff also argues that the ALJ reversibly erred in discounting the opinion of physician assistant Cronkright. However, physician assistants are considered "other sources" under 20 C.F.R. §§ 404.1513(d) and 416.913(d). Social Security Ruling 06-03p further provides that the ALJ "generally should explain the weight given to the opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939 at *6 (Aug 9, 2006). Such opinions "cannot by themselves, establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source." *Holcomb v. Astrue*, 389 Fed. App'x 757, 759 (10th Cir. July 22, 2010).

Here, the ALJ assigned Cronkright's opinions "little weight," reasoning:

> In November 2010, the claimant's treating physician's assistant, Holly Cronkright, P.A.-C, opined that the claimant was completely disabled and could not work permanently (3F/6; 4F/2-4). The claimant had previously been recommended to not work from September 29 until November 8, 2010 (3F/6). She further opined that the claimant needed to stay off her feet and elevate her legs, stating that the claimant could only sit four to six hours in an eight-hour workday with no walking or standing (4F/3-4). She opined that the claimant could lift up to 20 pounds (4F/4). Ms. Cronkright also found that the claimant could never bend, kneel, or crouch but could

> frequently reach, finger, and handle. The final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner (20 C.F.R. §§ 404.1527(e) and 416.927(e) and Social Security Ruling 96-2p). A statement by a medical source that the claimant is "disabled" or "unable to work" does not mean that the claimant will be determined to be disabled as that term is defined in the Act (20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1) and Social Security Ruling 96-5p). Furthermore, a physician's assistant is not an acceptable medical source (20 CFR 404.1513 (a) and 20 CFR 416.9139(a)). Additionally, Ms. Cronkright's own reports, along with the other medical evidence of record, fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and Ms. Cronkright did not specifically address this weakness. The course of conservative treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, as assessed by Ms. Cronkright.

(Tr. 20-21.) The Court concludes that these reasons for the weight accorded to Cronkright's opinion are "good reasons" and, therefore, the ALJ complied with the dictates of 20 C.F.R. 404.1513(a) and SSR 06–03P, 2006 WL 2329939 at *6 (Aug 9, 2006). As mentioned above, Plaintiff testified that she could bend at the waist and has not identified any objective medical evidence that suggests she cannot.

### C. Credibility

Plaintiff also argues that ALJ Eiler's evaluation of her credibility was not well-reasoned and was not supported by substantial evidence. (Pl.'s Mot. Summ. J. at 10-11.)

An ALJ's credibility assessment proceeds in two steps. *Baranich v. Barnhart*, 128 F. App'x 481, 487 (6th Cir. 2005). First, the ALJ determines whether the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 404.1529(c)(1); *Baranich*, 128 F. App'x at 487. If so, the ALJ then evaluates the "intensity and persistence" of the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1).

13

At this second step, the ALJ should not reject a claimant's "statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. To the contrary: the regulations list other considerations that should inform the ALJ's credibility assessment. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

Within the above framework, an ALJ's credibility analysis warrants considerable deference: a court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle."). Further, an ALJ's credibility analysis is subject to harmless error review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (citing *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) with approval); *Carmickle*, 533 F.3d at 1162 ("So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." (quotation marks omitted and punctuation

altered)).

Plaintiff specifically argues that the ALJ erroneously discounted her credibility because she was "discharged from physical therapy after inconsistently going due to work and her child's school schedule . . . ." (Pl.'s Mot. Summ. J. at 10-11.) It is true that the ALJ used the fact that Plaintiff had been discharged from physical therapy after inconsistent attendance to support her finding that Plaintiff's treatment had been essentially routine and conservative in nature. (Tr. 19. (citing Tr. 227).) On this point, however, the ALJ also noted that Dr. Beeman (the vascular specialist) had recommended that Plaintiff use compression stockings and "perhaps" even a lymphedema pump, but he did not recommend further studies or invasive treatment. (Tr. 19 (citing Tr. 257).) Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's treatment was conservative in nature. The fact that Plaintiff did not follow-through with her therapy is also relevant for an ALJ to consider. *See Policoro v. Comm'r of Soc. Sec.*, No. 1:09-CV-71, 2010 WL 3779910, at *5-6 (W.D. Mich. Mar. 22, 2010) ("The ALJ's finding was based, in part, on plaintiff's failure to seek regular and more intensive mental health care. . . . The ALJ applied the well-established general rule that a claimant's failure to seek treatment over an extended period of time is a factor to be considered against the claimant's assertion of a disabling condition."), *report and recommendation adopted*, 2010 WL 3779543 (W.D. Mich. Sept. 22, 2010).

Plaintiff also claims that the ALJ discounted her testimony that she could not work due to her lower extremity lymphedema and the need to elevate her feet to "waist level while seated." (Pl's Mot. Summ. J. at 12.) However, Plaintiff has not directed the Court to a medical opinion in the record indicating that she has to elevate her legs to waist level. And the Court has been unable to independently identify one. The only statement supporting such a limitation appears to be Plaintiff's

15

testimony at the hearing.

Moreover, the ALJ recognized that while Plaintiff showed signs of edema, other medical testing proved to be within normal limits. (Tr. 19.) For example, Plaintiff's chest x-rays were unremarkable, and a stress test was normal. (*Id*.) And while Plaintiff did have some symptoms of shortness of breath, warmness of sensation, and leg tiredness, she did so without the EKG changes, and arrhythmia normally associated with a disabling condition. (*Id*.) While objective evidence is not the only factor relevant when making credibility determinations, it remains a "useful indicator" for an ALJ when evaluating the credibility of a plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.") Here, the Court concludes that the objective evidence supports the ALJ's credibility assessment—particularly where there is no medical opinion concluding that Plaintiff must raise her feet to waist level, as opposed to foot stool level, while seated.

The ALJ also considered Plaintiff's reported daily activities and reasonably found them to be inconsistent with her allegations of extreme functional limitations. The ALJ noted that Plaintiff is the primary care giver of her two children (ages three and 13) and spends the entire day with the three-year old. (Tr. 19.) Plaintiff also remarked that she cares for her mother. (*Id*.) The ALJ noted that Plaintiff had no difficulty performing her own personal care. (*Id*.) Plaintiff goes to church, takes her daughter to school, grocery shops, and visits friends on a regular basis. (*Id*.) Plaintiff also reported going to the mall in September 2010. (*Id*. (citing Tr. 225).)

Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of

review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason. *Sims v. Comm'r of Soc. Sec*, 406 F. App'x 977, 981 (6th Cir. 2011). The Court finds no such compelling reason here.

### D. The Vocational Expert

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Farley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). Plaintiff asserts that the ALJ's hypotheticals to the VE were improper because they did not accurately describe Plaintiff's RFC. (Pl.'s Mot. Summ. J. at 5.). Because the Court has determined that the ALJ did not err in his RFC determination and the hypothetical tracked the RFC, this claim of error fails for the reasons stated.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the decision of the Administrative Law Judge. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 14) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*,

474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                    s/Laurie J. Michelson  
                                                    LAURIE J. MICHELSON  
                                                    UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 29, 2014.

                                                    s/Jane Johnson  
                                                    Deputy Clerk